William E. **BLACK**, Plaintiff,

v.

**EXXON COMPANY, U.S.A.**, Defendant.

Civ. A. No. 2:90–0573–8.

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 16, 1990.

---

**616**

S. Jahue Moore, West Columbia, S.C., for plaintiff.

Gaspare J. Bono, Washington, D.C., James C. Parham, Jr., Greenville, S.C., for defendant.

## ORDER

BLATT, Senior District Judge.

This franchise termination case is currently before the court as a result of the plaintiff's request for a preliminary injunction. The parties filed briefs and this matter was set for a hearing on September 6, 1990. At the hearing, the court was prepared to deny the request; however, the plaintiff requested an opportunity to depose the person employed by the defendant who prepared the financial models used as a guide for termination of franchise relationships.

Notwithstanding the court's leave to depose the appropriate person[1], the plaintiff instead filed an affidavit of an economist expressing that person's opinion about the financial models used; this is not the type of information for which the plaintiff requested this court's delay in ruling on the matter at hand.

■ In reviewing a request for a preliminary injunction under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.*, the court shall grant an injunction against a franchisor if the following factors are met: 1) that the franchise has been terminated or has not been renewed; 2) that there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and 3) that the hardship imposed upon the franchisor by the issuance of a preliminary injunction will be less than the hardship imposed upon the franchisee if such preliminary injunctive relief were not granted. *See,* 15 U.S.C. § 2805(b)(2). In this case, the first factor is not in dispute and as to the third factor, the court is convinced that the balance of hardships weighs in favor of the franchisee[2], although the court need not conclusively decide this issue inasmuch as it is not convinced that the second factor has been met.

■ The court concludes that there do not exist sufficiently serious questions going to the merits of this case that make such questions a fair ground for litigation. The central issues in this case are whether the franchisor acted in good faith[3] and in the normal course of business in terminating the franchise relationship on the ground that continuation of the relationship is likely to be uneconomical. 15 U.S.C. § 2802(b)(3)(D)(i)(IV). If the franchisor has acted in accordance with these standards, then the franchisor has no duty to continue the franchise relationship. *See, Kessler v. Amoco Oil Co.,* 670 F.Supp. 853 (E.D.Mo. 1987). In this case, the franchisor has presented the financial models used in evaluating the feasibility of franchise renewals. This model is used in the normal course of business and applied to all franchisees in a

---

1. The court was interested in this information to evaluate the plaintiff's contention that the defendant did not act in good faith and in the normal course of business.

2. The court does note, however, that the franchisee owns the land and building where the gas station is located. No information has been provided as to the difficulty in establishing another franchise relationship or procuring petroleum from other sources. The court feels that this situation, although unfortunate, is somewhat different than those situations where the franchisee does not own the property.

3. "Good faith", within the meaning of the PMPA, means the franchisor's subjective good faith, "and not the objective reasonableness of the franchisor's acts, nor the alleged impact of those acts on any particular franchisee. *See, Tiller v. Amerada Hess Corp.,* 540 F.Supp. 160 (D.S.C.1981). The court also notes that Congress did not enact the PMPA to provide a basis for reexamining legitimate business decisions of the franchisor. *Midwest Petroleum Co. v. American Petrofina Marketing,* 635 F.Supp. 815 (E.D. Mo.1986). Neither should the court, in the absence of the appropriate statutory reasons or improper acts, substitute its own business judgment for that of the defendant.

uniform manner. The plaintiff has not presented any information or evidence of record at this time that would controvert the defendant's assertion that the relationship was terminated upon its determination that the relationship was uneconomical.

■ Although there does not appear to be a clear definition of the "sufficiently serious" question prong of the analysis [4], there is support in this district to the extent that the plaintiff must show some reasonable chance of success on the merits. *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178 (D.S.C.1980); *see also, Tiller,* 540 F.Supp. at 164. In this court's opinion, the plaintiff has not shown at this time that there exist sufficiently serious questions going to the merits that would make such questions a fair ground for litigation, or, that there is some reasonable chance of success on the merits. The only information presented by the plaintiff at this time is an affidavit from an economist indicating that the affiant disagrees with how the defendant, in the exercise of its business judgment, conducts its economic analysis calculations. This affidavit alone is not sufficient to present a serious question as to the subjective good faith of the defendant in reaching its decision that the relationship is uneconomical; essentially, the affiant merely states that he would proceed in a different manner. Accordingly, the statutory requirements for the issuance of a preliminary injunction in this type of case have not been properly established.

Therefore, the plaintiff's request for a preliminary injunction is hereby denied.

IT IS SO ORDERED.

---

**4.** *See, McFadden v. Amoco Oil Co.,* 486 F.Supp. 274 (D.S.C.1980), wherein then U.S. District Judge Chapman referred to the preliminary injunction factor analysis found in *Blackwelder Furniture Co. v. Selig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir.1977), and noted that both *Blackwelder* and the PMPA require that there be serious questions that are a fair ground for litigation. In addition, the court should not consider whether the hardship suffered by the franchisee as a result of the denial of a preliminary injunction could be readily remedied in damages. *Barnes v. Gulf Oil Corp.,* 824 F.2d 300 (4th Cir.1987).